# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

FRANK DAVID SEINFELD,            :
                                 :
       Plaintiff,            :
                                 :
       v.            :   Civ. No. 09-887-LPS
                                 :
JAMES E. O'CONNOR, TOD C.        :
HOLMES, DONALD W. SLAGER,        :
JOHN W. CROGHAN, DAVID I. FOLEY  :
RAMON A. RODRIGUEZ, MICHAEL W.   :
WICKHAM, JAMES W. CROWNOVER      :
NOLAN LEHMANN, ALLAN C.          :
SORENSEN, WILLIAM J. FLYNN,      :
W. LEE NUTTER, JOHN M. TRANI,    :
MICHAEL LARSON, and              :
REPUBLIC SERVICES, INC.,         :
                                 :
       Defendants,            :
   and            :
                                 :
REPUBLIC SERVICES, INC.          :
                                 :
       Nominal Defendant.  :

## OPINION

Robert D. Goldberg, BIGGS AND BATTAGLIA, Wilmington, DE; Mark J. Rosen, BARRACK, RODOS & BACINE, Philadelphia, PA; Alexander Arnold Gershon, BARRACK, RODOS & BACINE, New York, NY, Attorneys for Plaintiff.

Andre G. Bouchard, BOUCHARD MARGULES & FRIEDLANDER, P.A., Wilmington, DE; Michele Odorizzi, MAYER BROWN LLP, Chicago, IL; Allen M. Terrell, Jr. Daniel A., Dreisbach, Geoffrey G. Grivner, Nicole C. Bright, RICHARDS, LAYTON & FINGER, Wilmington, DE, Attorneys for Defendants.

March 30, 2011
Wilmington, DE

*[signature]*

**Stark, District Judge:**

This is a shareholder securities lawsuit. Presently pending before the Court are motions to dismiss filed by the defendant corporation and the defendant directors. (D.I. 17; D.I. 19) For the reasons that follow, the Court will grant the corporation's motion to dismiss and will deny the individual directors' motion to dismiss as moot.

## I.    BACKGROUND

Defendant, Republic Services, Inc. ("Republic"), a publicly traded company incorporated in the state of Delaware, is one of the nation's largest waste-hauling and waste-disposal companies. (D.I. 18 at 2) Plaintiff Frank David Seinfeld ("Seinfeld") is one of Republic's stockholders. Seinfeld held stock in the company at the time of the transactions that form the basis of this lawsuit and continuously thereafter. (D.I. 13 at 2)

The controversy here arises out of an April 3, 2009 proxy statement that was distributed by Republic's board of directors in anticipation of Republic's annual stockholder meeting that eventually took place on May 14, 2009. (D.I. 18 at 2; *id.* Ex. A) The proxy statement solicited shareholder approval for several different items, including two interrelated compensation plans for some of Republic's senior executives. The Executive Incentive Plan ("EIP") authorized the company to grant "annual awards, long-term awards and synergy awards to individuals selected from time to time by the Compensation Committee . . . ." (D.I. 18 Ex. A at 46) The Synergy Plan, which is a part of the EIP, granted the Compensation Committee discretion to award one-time cash bonuses to certain executives based upon cost-reductions (i.e., synergies) flowing from Republic's 2008 merger with Allied Waste, which was completed on December 5, 2008. (*Id.* at 46, 49; *see also* D.I. 31 Ex. A at 1) Both the EIP and the Synergy Plan were described in the

1

proxy statement; the plans themselves were also attached as exhibits to the proxy statement. (*Id.* at 46-51; *id.* at A-1; *id.* at B-1) The proxy statement laid out the three types of incentive awards that would be authorized under the EIP, who would be eligible under the plans, the menu of performance goals, and how the awards would be treated in certain situations, such as in the event that an eligible officer voluntarily or involuntarily left the company's employment. (*Id.*)

The proxy statement states that Republic was submitting the EIP to the stockholders so that payments under the EIP "may qualify as performance-based compensation under Section 162(m) of the Internal Revenue Code" (hereinafter, "IRC"). (*Id.* at 46) Section 162(m) of the IRC grants a tax exemption to companies for certain compensation they pay under certain circumstances. The EIP and the Synergy Plan were intended to comply with the IRC, as well as relevant SEC and Treasury regulations, so that the plans could qualify for tax-deductions. (D.I. 25 at 1)

The EIP and the Synergy Plan were approved by Republic's stockholders at the May 14, 2009 annual stockholder meeting. (D.I. 18 at 1) On November 20, 2009, Seinfeld filed the instant lawsuit, alleging that the April 3, 2009 proxy statement contained materially false or misleading statements or omissions. (D.I. 1; D.I. 13) Seinfeld's first two claims for relief are direct claims pursuant to § 14(a) of the Securities Exchange Act of 1934 ("the Exchange Act"). In these first two causes of action, Seinfeld names as defendants Republic, its board of directors, and three of its officers. (D.I. 13 at 3; *id.* at 17) Seinfeld's third claim is a derivative action on behalf of Republic against the individual members of the board of directors in their personal

capacities.[1] (D.I. 13 at 18) Republic filed a motion to dismiss the direct claims against all of the defendants on May 12, 2010. (D.I. 17; D.I. 18) On the same day, the individual defendants filed a separate motion to dismiss the derivative action. (D.I. 19; D.I. 20) Seinfeld filed a joint brief in opposition to the two motions. (D.I. 25) The Court heard oral argument on the motions on February 18, 2011. (D.I. 36) ("Tr.")

## II. **LEGAL STANDARDS**

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of jurisdiction over the subject matter. *See Samsung Electronics Co., Ltd. v. ON Semiconductor Corp.*, 541 F. Supp.2d 645, 648 (D. Del. 2008). Motions brought under Rule 12(b)(1) may present either facial or factual challenges to the Court's subject matter jurisdiction.

> In reviewing a facial challenge under Rule 12(b)(1), the standards relevant to Rule 12(b)(6) apply. In this regard, the Court must accept all factual allegations in the Complaint as true, and the Court may only consider the complaint and documents referenced in or attached to the complaint. *Gould Electronics, Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). [In contrast, however,] [i]n reviewing a factual challenge to the Court's subject matter jurisdiction, the Court is not confined to the allegations of the complaint, and the presumption of truthfulness does not attach to the allegations in the complaint. *Mortensen v. First Fed. Sav. & Loan*, 549 F.2d 884, 891 (3d Cir. 1997). Instead, the Court may consider evidence outside the pleadings, including affidavits, depositions and testimony, to resolve any factual issues bearing on jurisdiction. *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997).

*Id.*

Once the Court's subject matter jurisdiction over a complaint is challenged, Plaintiff

---

[1]The Court notes that Seinfeld explicitly excludes individual defendant Michael Larson from his first claim for relief, while explicitly naming Larson as a defendant for his second and third claims for relief. (D.I. 13 at 17-18) For present purposes, this distinction is not relevant.

bears the burden of proving that jurisdiction exists. *Mortensen*, 549 F.2d at 891. "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is so insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court], or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (internal quotation marks omitted).

Evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to accept as true all material allegations of the complaint. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, the Court may grant such a motion to dismiss only if, after "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted).

However, "[t]o survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007)). While heightened fact pleading is not required, "enough facts to state a claim to relief that is plausible on its face" must be alleged. *Twombly,* 127 S. Ct. at 1974. At bottom, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim. *Wilkerson v. New Media Technology Charter School*

4

*Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted). Nor is the Court

obligated to accept as true "bald assertions," *Morse v. Lower Merion School Dist.*, 132 F.3d 902,

906 (3d Cir. 1997) (internal quotation marks omitted), "unsupported conclusions and

unwarranted inferences," *Schuylkill Energy Resources, Inc. v. Pennsylvania Power & Light Co.*,

113 F.3d 405, 417 (3d Cir. 1997), or allegations that are "self-evidently false." *Nami v. Fauver*,

82 F.3d 63, 69 (3d Cir. 1996).

## III.  DISCUSSION

### A.  Direct Claims against Republic

Seinfeld asserts two direct claims against Republic based on § 14(a) of the Exchange Act.

15 U.S.C. § 78n *et seq* (2006).  Section 14(a) makes it unlawful for anyone to solicit proxies that

are in contravention of rules and regulations promulgated by the SEC.  *Id.*  SEC Rule 14a-9,

promulgated pursuant to § 14(a) states, in relevant part:

> No solicitation subject to this regulation shall be made by means of
> any proxy statement . . . which, at the time . . . it is made, is false or
> misleading with respect to any material fact, or which omits to
> state any material fact necessary in order to make the statements
> therein not false or misleading or necessary to correct any
> statement in any earlier communication with respect to the
> solicitation of a proxy for the same meeting or subject matter
> which has become false or misleading.

17 C.F.R. § 240.14a-9(a).  Section 14(a) is a key tool to prevent corporate directors or officers

from procuring shareholder approval for transactions through proxy solicitations that contain

false or incomplete disclosure of material information.  *See J. I. Case Co. v. Borak*, 377 U.S. 426,

431 (1964); *Seinfeld v. Becherer*, 461 F.3d 365, 370 (3d Cir. 2006); *Shaev v. Saper*, 320 F.3d 373

(3d Cir. 2003); *Gould v. Am.-Hawaiian S.S. Co.*, 535 F.2d 761 (3d Cir. 1976).

In order establish a prima facie claim for relief under § 14(a), a plaintiff must allege that "(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1329 (3d Cir. 2002). A misrepresentation or omission is considered material if a reasonable shareholder would have considered it important when deciding how to vote. *See TSC Indus. Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

Seinfeld alleges that the proxy statement at issue in this case contained false or misleading information or material omissions with respect to the EIP and the Synergy Plan. Specifically, Seinfeld contends that the EIP failed to comply with the requirements of IRC § 162(m), as well as applicable Treasury and SEC regulations. (D.I. 25 at 2) The two compensation plans are so "patently defective," in Seinfeld's view, that they would not qualify for tax deductions under the IRC. (*Id.* at 6) To the extent that the proxy statement represented to the stockholders that the EIP would result in tax deductions, therefore, the proxy statement was demonstrably false or misleading. (*Id.* at 1-2)

In support of his position that the EIP is not tax deductible, and therefore the proxy statement was misleading, Seinfeld advances two basic arguments. First, Seinfeld alleges that the stockholders were coerced into voting for the EIP, and such coerced approval renders the EIP non-deductible under the controlling regulations. (D.I. 13 at 6; D.I. 25 at 10-11) Second, Seinfeld argues that the EIP does not satisfy several statutory and regulatory requirements necessary for the IRS to consider it deductible. (D.I. 13 at 7-8) The Court will consider each of these arguments in turn.

6

1. **Coercion Theory**

Generally, employee compensation in excess of $1 million paid by a publicly-held corporation is not tax-deductible. *See* IRC § 162 (m)(1).[2] An exception to this general rule is "any remuneration payable solely on account of the attainment of one or more performance goals." IRC § 162(m)(4)(C). Such "performance-based awards" are only tax-deductible, however, if three conditions are satisfied: (i) the performance goals are determined by a compensation committee of outside directors; (ii) the material terms under which the remuneration is to be paid, including the performance goals, are disclosed to and approved by a majority of stockholders; and (iii) before any payment of such remuneration, the compensation committee certifies that the performance goals were met. *See id.* Importantly, Department of Treasury regulations provide that payments made under such performance-based plans are not tax deductible "if the compensation would be paid regardless of whether the material terms are approved by stockholders." 26 C.F.R. § 1.126-27(e)(4)(i).

Seinfeld alleges that Republic's proxy statement states that even if the stockholders did not approve the EIP, Republic would make bonus payments to the executives anyway. (D.I. 25 at 11) Faced with such a choice – to approve the plan and receive potential tax benefits or reject the plan only to have the Board award the same bonuses but without the company earning a tax deduction – Seinfeld argues that stockholders were effectively coerced into voting for the plan. Under the applicable Treasury regulations, this "threat" rendered the shareholder approval

---

[2]"In the case of any publicly held corporation, no deduction shall be allowed under this chapter for applicable employee remuneration with respect to any covered employee to the extent that the amount of such remuneration for the taxable year with respect to such employee exceeds $1,000,000." IRC § 162(m)(1).

meaningless, thereby precluding the EIP from qualifying as tax deductible. *See* Treas. Reg. § 1.162-27(e)(4)(i).

Republic argues that Seinfeld inaccurately characterizes the contents of the proxy statement. For example, Republic did not represent that the EIP was guaranteed to be tax deductible. Instead, the proxy statement makes clear that the EIP "***may*** qualify as performance-based compensation under Section 162(m)." (D.I. 18 at 11) (emphasis added) Later, the proxy statement provides that the EIP is "***intended*** to comply" with the requirements of § 162(m). (*Id.*) (emphasis added) Thus, Seinfeld's argument is baseless: there was no promise that the EIP was guaranteed to be tax-deductible, so even if the plan was ultimately ***not deductible***, the proxy statement does not contain false or misleading statements. (*Id.*) Furthermore, the EIP does not state that the executives would without question receive bonuses if the EIP plan were not approved – it only states that the compensation committee ***may*** award bonuses. Republic directs the Court's attention to a private letter ruling issued by the IRS in 2006 that condoned exactly the kind of reservation of rights that Republic made in this case. (D.I. 18 at 11; *see also* IRS Priv. Ltr. Rul. 200617018, 2006 WL 1126274 (Apr. 28, 2006)) Thus, Seinfeld's allegation that Republic coerced its stockholders is wrong factually and fails as a matter of law.

In analyzing the parties' dispute, the Court begins with the relevant text of the proxy statement.[3] The proxy statement reads:

---

[3]In the context of reviewing the pending motions to dismiss, the Court may consider the proxy statement – which was filed with the SEC and is integral to Seinfeld's complaint – without converting these motions into motions for summary judgment. *See In re U.S. West, Inc. Sec. Litig.*, 65 Fed. Appx. 856, 862 n.2 (3d Cir. May 20, 2003); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); Tr. at 22.

If the Executive Incentive Plan is not approved by the stockholders, we will not make any payments under that plan. *We may, however, grant discretionary cash bonuses or other compensation outside of the Executive Incentive Plan to the individuals who would have been eligible to participate in the Executive Incentive Plan*, although no employee has a guaranteed right to any bonus or other compensation as a substitute in the event stockholders do not approve the Executive Incentive Plan. *Any such bonuses paid outside the Executive Incentive Plan would not qualify as performance-based compensation under Section 162(m) of the Internal Revenue Code, and, accordingly, all or a portion of the bonuses might not be deductible* by our company for federal income tax purposes.

(D.I. 18 Ex. A at 46 (emphasis added)) In the same section of the proxy statement explaining the EIP, under the heading, "*Federal Income Tax Consequences*," the proxy statement explains that, "*The Executive Incentive Plan is intended to comply with the requirements of Section 162(m) for 'performance-based compensation.'*" (*Id.* at 51) (emphasis added)

Thus, it is plain that the proxy statement does not say what Seinfeld alleges. It does not assert that the EIP *will* be tax-deductible, only that it is *intended* to be deductible under IRC § 162(m). Likewise, the proxy statement does not state that in the event the EIP is rejected, employees *will* receive other bonuses in its place. It only states that employees *may* receive such payments – and adds, correctly, that these payments might not be deductible.[4] The Court rejects Seinfeld's contrary interpretation of the proxy statement, which relies on unsupported assertions

---

[4]Seinfeld also argues that certain employment contracts created enforceable rights to bonuses for some of the employees who would be covered by the EIP. (D.I. 25 at 12) But the contracts identified by Seinfeld provide: "Employee shall be entitled to such other bonuses as may be determined by the Board of Directors of the Company or by a committee of the Board of Directors as determined by the Board of Directors, in its sole discretion." (D.I. 25 Ex. 1 at 3) The employment contracts contemplate that the Board of Directors *may* award bonuses, in its *sole discretion*. The contracts do not, however, create any enforceable rights to bonuses, as Seinfeld alleges.

of counsel that "the way this plan works is the meaning of the word 'might' in this plan is 'will,' as is the meaning of the word 'won't' is will." (Tr. at 17; *see also id.* at 19-20 (insisting proxy statement is "a veiled promise to pay bonuses regardless of what the stockholders do")) Such conclusory and implausible allegations do not state a cause of action on which relief may be granted.

Seinfeld's reliance on a Third Circuit case, *Shaev v. Saper*, 320 F.3d 373 (3d Cir. 2003), is also unavailing. In *Shaev*, like here, the proxy statement stated that in the event the shareholders do not approve the plan, the board may nevertheless award bonuses, and such bonuses would not be deductible under IRC § 162(m). *See* 320 F.3d at 376. The Third Circuit held that the compensation plan involved in *Shaev* was not deductible, even if the shareholders approved it. *See id.* This conclusion appears to have been based on facts of a type missing from the instant case. In *Shaev*, the defendant, who was set to receive the bonus under the plan, was a major shareholder and allegedly dominated half of the board. *See id.* at 377. Additionally, the Compensation Committee in *Shaev* had voted to increase the defendant's maximum bonus by more than $1 million a mere six weeks before the performance period ended. *See id.* Under these circumstances, it was plausible to assume that the directors would pay the defendant a bonus regardless of whether the shareholders approved the plan. Here, by contrast, there are no allegations that Republic's directors had just recently approved large bonuses or had already effectively decided to pay bonuses no matter the outcome of the shareholder vote. Nor is Republic's board alleged to be controlled by any of the defendants.[5] (Tr. at 6)

---

[5]Another reason that the compensation plan in *Shaev* was not deductible was because the board retained discretion to increase payments under the plan. *See id.* at 381. Seinfeld makes no similar allegations that Republic's board retained such discretion under the EIP, nor could he: the

10

Additionally, *Shaev* was decided three years before the IRS issued a private letter ruling specifically addressing performance-based awards. *See* I.R.S. P.L.R. 200617018, 2006 WL 1126274 (Apr. 28, 2006). The private letter ruling states as follows:

> Taxpayer requests a ruling that Taxpayer's reserving the right, in its proxy statement, to pay discretionary bonuses outside of the Bonus Plan, as well as the subsequent payment of any discretionary bonuses, does not prevent the Bonus Plan from qualifying as a qualified performance-based compensation plan under section 162(m)(4)(C) of the Code and section 1.162-27(e) of the regulations. . . .
>
> Under section 1.162-27(e)(2)(v) of the regulations, compensation is not considered performance-based if the facts and circumstances indicate that the employee would receive all or part of the compensation regardless of whether the performance goal is attained. Thus, if the payment of compensation under an award is only nominally or partially contingent on attaining a performance goal, none of the compensation payable under the award will be considered performance-based. . . .
>
> Based on the forgoing, we rule that Taxpayer's reservation of the right to pay discretionary bonuses outside of the Bonus Plan will not prevent the Bonus Plan from qualifying as a qualified performance-based compensation plan under section 162(m)(4)(C) of the Code and section 1.162-27(e) of the Income tax Regulations.

*Id.*

Private letter rulings are not precedential. *See* I.R.C. § 6110 (k)(3) (2006); *see also AmerGen Energy Co., LLC v. United States*, 94 Fed. Cl. 413 (Fed. Cl. 2010) ("Private letter rulings . . . may not be used or cited in any precedential way and thus, a fortiori, may not be used to support, in any fashion, an argument that one interpretation of the Code is more authoritative

---

EIP clearly provides the maximum amount that the compensation committee could award under the EIP. (D.I. 18 Ex. A at 48 ("[T]he following chart lists the maximum awards that may be received by the named executive officer. . . ."))

than another."). Nonetheless, the Court finds this particular private letter ruling to be informative here, as it sheds light on whether the IRS would view the EIP to be tax deductible. The private letter ruling strongly suggests that the IRS would find the EIP deductible and, to that extent, renders even less plausible Seinfeld's contention that the proxy statement is materially false and misleading.[6]

Simply put, Seinfeld has pointed to no facts that would provide a plausible basis to conclude that Republic planned to give the bonuses all along, and thereby coerced its stockholders into approving the EIP, rendering payments under the EIP non-deductible. Seinfeld's coercion theory, therefore, does not provide a basis for denying Republic's motion to dismiss.

## 2.    **Seinfeld's Additional Allegations**

Seinfeld argues that the proxy statement is materially false and misleading in several other respects. Seinfeld identifies a list of alleged deficiencies in the EIP, each of which supposedly precludes the EIP from qualifying as a performance-based award under § 162(m). Each of these alleged deficiencies, in Seinfeld's view, renders the EIP non-deductible. Therefore, he concludes, the proxy statement's disclosures asserting (or even suggesting) that the EIP will be deductible are, in his view, false and misleading.

---

[6]Seinfeld's attempt to distinguish the IRS private letter ruling because it cites to a different Treasury regulation is unconvincing. (D.I. 25 at 13)  As Republic correctly points out, the IRS did consider and cite to Treasury regulation § 1.162-27(e) generally, and the regulation under consideration in the instant matter is contained within the section upon which the IRS based its opinion.  Furthermore, the rationale behind the IRS's ruling is equally applicable to subpart (e)(4)(i) and subpart (e)(2)(v) of the Treasury regulation: in both cases, deductibility turns on whether the compensation would be given irrespective of whether the stockholders approved the plan.

An immediate problem with this theory is, again, that the proxy statement does not state that the EIP *will be* deductible. Moreover, as the Court has already explained, Republic's expressed belief that the EIP *would be* deductible was a reasonable belief. In any event, there are other problems with the specifics of Seinfeld's further allegations, as described below.

### a. Retirement Provision

The EIP contains provisions for different scenarios involving the termination of employment of an executive covered by the plan. For example, "If a participant's employment is terminated by reason of the participant's disability or retirement . . . the company will pay the participant a pro rata amount . . ." (D.I. 18 Ex. A at 48) Seinfeld contends that the inclusion in the EIP of this retirement provision precludes deductibility because "neither § 162(m) nor the implementing regulations permit such an exemption." (D.I. 25 at 13)

As Republic explains, the EIP makes clear that a performance-based award for an executive who has retired is limited to a pro-rata proportion of any award that "would have been paid" had the employee remained with the Company throughout the entire performance period. (D.I. 18 at 12) The EIP is also clear that any such award will not be payable until the performance period ends – and, thus, any payment to a retiring executive is not payable "regardless of whether the performance goal is attained," as Seinfeld contends. (*Id.*)

Seinfeld cites to an IRS Revenue Ruling that he submits provides support for his position. *See* Rev. Rul. 2008-13, 2008 WL 451876. However, as Republic points out, the compensation plan involved in the Revenue Ruling provided "compensation will be paid without regard to whether the performance goal is attained," in the event a covered employee retired. *See id.*; *see also* D.I. 31 at 4. That is not the situation here. Instead, under the EIP, no executives will

receive any compensation merely because they retire. The EIP explicitly provides that: (1) the award will not be earned or distributed until after the performance period ends; (2) the award will be calculated based on the performance goals for the entire performance period; and (3) the retiring executive will be eligible for any award to which she otherwise would have been entitled, but on a pro-rata basis determined by the amount of time she completed. (D.I. 18 Ex. A at 48; *see id.* at A-6) Despite Seinfeld's argument to the contrary, the Compensation Committee is required to certify that the performance goals have been achieved, before payments are made, even to retiring executives, which satisfies the requirements of IRC § 162(m). *(See id.)*

Seinfeld further observes that the regulations have exemptions for compensation payable "upon death, disability, or change of ownership or control." Treas. Reg. § 1.162-27(e)(2)(v). Important in Seinfeld's view is the absence of an express exception for compensation payable upon retirement. Pointing to the canon of statutory construction of *expressio unius est exclusio alterius, see, e.g., Philadelphia & Reading Corp. v. United States*, 944 F.2d 1063, 1073 (3d Cir. 1991), Seinfeld concludes that payments under the EIP are not deductible if paid upon retirement. Seinfeld might have a point if the EIP provided for payments based solely on retirement, but, as already explained, it does not.

Hence, even in the situation of a retirement, compensation under the EIP is fairly understood as being awarded "solely on account of the attainment of one or more performance goals," and, therefore, the EIP does not run afoul of IRC § 162(m) for this reason.[7]

---

[7]Seinfeld's effort to rely on bonus payments made to a retiring executive *after* the filing of his complaint is also unavailing. (Tr. at 18-19) These payments are not, of course, alleged in the complaint. Nor did Seinfeld, until the hearing, seek leave to amend. (*Id.* at 21) Under the circumstances – which include that Seinfeld's original complaint was filed sixteen months ago in November 2009, and he already amended his complaint once following defendants' briefing their

**b.    Disclosure of Material Terms**

The parties also dispute whether the proxy statement satisfies the requirement under IRC

§ 162(m) that any performance-based compensation plan must disclose the "material terms under

which the remuneration is to be paid, including the performance goals." IRC § 162(m)(4)(c)(ii);

*see also* D.I. 25 at 15-17; D.I. 18 at 12-15.  At issue is whether a list of general business criteria –

a "menu plan" – constitutes sufficient disclosure.

Seinfeld contends that the Treasury regulations, informed by the legislative history, make

clear that IRC § 162(m) should "take into account the SEC rules regarding disclosure . . . [and

that] disclosure should be as specific as possible." H.R. Rep 103- 213, pt. 4, at 588 (1993); *see*

*also* D.I. 25 at 15.  Seinfeld concedes that, under both Treasury and SEC regulations, the board is

not required to disclose specific targets for a particular performance goal.  (D.I. 25 at 16)

Seinfeld instead contends that, under SEC regulations, if a proxy statement does not disclose

specific targets, the proxy must "discuss how difficult it will be for the executive or how likely it

will be for the registrant to achieve the undisclosed target levels."[8]  17 C.F.R. § 229.402(b).

Republic, on the other hand, submits that the Treasury regulations implementing IRC

§ 162(m) do not require a level of detail beyond "a description of the business criteria on which

---

motion to dismiss the original complaint – granting Plaintiff's latest and much belated request for
amendment would not be appropriate.

[8]Seinfeld also refers to SEC disclosure requirements pursuant to Reg S-K relating to
Compensation Disclosure and Analysis ("CD&A").  (D.I. 25 at 17)  Item 402 of Reg S-K
requires a discussion in the company's annual proxy statement of the impact of accounting and
tax treatment of compensation. 17 C.F.R. § 229.402(b).  In particular, Item 402 requires
disclosure of compensation "awarded to, earned by, or paid to" the named executives.  17 C.F.R.
§ 229.402(A)(2).  That is, Item 402 is directed at compensation that has already been paid, not
compensation that may in the future be paid.

the performance goal is based." Treas. Reg. § 1.162-27(e)(4). In Republic's view, the regulations specifically contemplate the situation in which a Board grants discretion to a compensation committee to select from an array of business criteria. According to Republic, "Example 3 to subsection (e)(4) assumes the same situation at issue" here. (D.I. 18 at 13-14)

Treasury regulation § 1.162-27(e)(4)(i) provides that, "[t]he material terms include the employees eligible to receive compensation; *a description of the business criteria on which the performance goal is based*; and either the maximum amount of compensation that could be paid to any employee or the formula used to calculate the amount of compensation to be paid to the employee if the performance goal is attained." (Emphasis added) The EIP disclosures at issue comply with this requirement. The regulation contemplates the kind of "menu-plan" of possible performance measures and goals that Republic used here. Specifically, Example 3 of the regulation, as Republic points out, describes a plan much like Republic's own EIP, in which a compensation committee chooses from among listed business criteria. Treas. Reg. § 1.162-27(e)(4)(ix). The plan given in the example provides that the named executives may receive a bonus based on three factors: "increases in earnings per share, reduction in costs for specified divisions, and increases in sales by specified divisions." (*Id.*) The example goes on to note that, "[u]nder the terms of the plan, the compensation committee retains the discretion to determine whether a bonus will be paid under any one of the goals." (*Id.*) All of this is similar to Republic's EIP.[9]

---

[9]The Treasury regulations for these kinds of menu plans – giving a compensation committee discretion to change which performance criteria will be used to award bonuses – must be approved every five years. Treas. Reg. § 1.162-27(e)(4)(vi); *see also* Tr. at 9-10.

Seinfeld's reliance on legislative history does not alter this conclusion. Instead, while the legislative history indicates that Congress did not intend to give a compensation committee unfettered discretion, Congress also made clear that not all details of a plan need be disclosed. The Treasury regulations, with which Republic's EIP and proxy are compliant, are consistent with this legislative history.

### c. Performance Period

Treasury regulation § 1.162-27(e)(2)(i) requires that, in order to be deductible, a plan must include "preestablished goals" that are "substantially uncertain" at the time the compensation committee establishes the goal. Seinfeld argues that a year-long performance period is the minimum length permitted for deductibility. According to Seinfeld, any period shorter than a year would eviscerate the requirement that the performance goals be "substantially uncertain." (D.I. 25 at 20)

Republic counters that there is no allegation that its Compensation Committee has ever set a performance period of less than one year for its EIP or that it will likely do so in the future. To Republic, there is no reason to address Seinfeld's "hypothetical" arguments. (D.I. 18 at 18) In any event, Republic continues, the regulations do not mandate a one-year minimum performance period.[10]

---

[10]The regulations provide, in pertinent part: "A performance goal is considered preestablished if it is established in writing by the compensation committee not later than 90 days after the commencement of the period . . . . However, in no event will a performance goal be considered to be preestablished if it is established after 25 percent of the period of service (as scheduled in good faith at the time the goal is established) has elapsed." Treas. Reg. § 1.162-27(e)(2)(ii). The regulations are silent as to whether a period of less than one year is permitted, provided that the period is established before 25 percent of the period has elapsed. *See Shaev*, 320 F.3d at 381 ("In the absence of special circumstances, such as when a new company is formed or when an established company changes its fiscal year in good faith, a performance

The Court concludes that it is unnecessary to decide the minimum performance period permitted by the statute and regulations. This is because Republic is correct that Seinfeld alleges, as he himself explains, that "[w]ithin the first 90 days of fiscal year 2009, the compensation committee of the Company's board set the targets for earnings per share and free cash flow for annual incentives under the EIP." (D.I. 13 at 9) There is no allegation that Republic established a performance period of less than one year. There is no need to address the permissibility of an unalleged hypothetical situation.

### d.     Synergy Plan Objection[11]

The proxy statement describes executive compensation for "net annual synergies" achieved due to the 2008 merger between Republic and Allied Waste. (D.I. 13 at 13; D.I. 18 Ex. A at B-1) Seinfeld contends that the Synergy Plan cannot qualify for deductibility under IRC § 162 because its performance goal – $150 million in annual synergies by December 31, 2010 – was not "substantially uncertain" at the time the board established the goal. (D.I. 25 at 22; D.I. 18 Ex. A at B-1; D.I. 13 at 13) Seinfeld reaches this conclusion based on Republic's 2008 10-K statement, which it filed with the SEC just ten days before the proxy statement at issue here. The 2008 10-K discloses that by that time, Republic "had identified and was on track to realize in 2009 approximately $100 million, or 67% of the total expected annual run-rate synergies." (D.I. 25 at 22)

---

period shorter than one year makes it much less likely that [the plan] will meet this requirement.").

    [11]Seinfeld acknowledges that his contention that the EIP and the Synergy Plan should have been subject to separate votes is effectively barred by laches. (D.I. 25 at 23) His request that "[s]hould the Court require a new vote," it should "require two votes" (*id.*) is moot, as the Court is not requiring a new vote.

The applicable Treasury regulation is § 1.162-27(e)(2)(i), which provides: "A performance goal is considered preestablished if it is established in writing by the compensation committee not later than 90 days after the commencement of the period of service to which the performance goal relates, provided that the outcome is ***substantially uncertain*** at the time the compensation committee actually establishes the goal." (Emphasis added) The regulation provides examples. *See, e.g.,* Treas. Reg. 1.162-27(e)(2)(vii). Among them is example three, which explains that a bonus contingent on profits is substantially uncertain even if a company has a long history of profitability.

Here, taking Seinfeld's allegations as true, the Synergy Plan involves a performance period beginning on January 1, 2009 and ending on December 31, 2010. Before 25 percent of this period had elapsed (and also before ninety days of the period had elapsed), on March 12, 2009, the Compensation Committee approved the Synergy Plan, which set as a performance goal $150 million of annual synergies. (D.I. 18 Ex. A at B-1) This goal matched Republic's expectation at the time the merger was announced. (D.I. 25 at 22; *see also* D.I. 31 Ex. A at 1) Moreover, as disclosed in the 2008 10-K, Republic had already identified $100 million of potential annual synergies that it was on track to realize in 2009. (D.I. 31 Ex. A at 1)

That Republic confidently and consistently predicted such synergies, however, does not mean that Republic had already accomplished such synergies. Nor does it mean that Republic was ***not*** substantially uncertain to achieve its goals. Among other things, management would have to work diligently throughout the performance period to integrate the merged companies and accomplish the identified synergies. Furthermore, only $100 million in annual synergies had been identified as potentially achievable during 2009, not the $150 million that the Synergy Plan

sets as the target by the end of 2010. (*Id.*)

Finally, Seinfeld contends that the proxy statement runs afoul of Treasury regulations because it did not list a maximum amount to be paid to executives, since the Board has discretion to award bonuses in addition to those paid pursuant to the Synergy Plan. (D.I. 25 at 21) This argument fares no better. The proxy statement clearly set forth the maximum amounts of compensation that could be awarded under the Synergy Plan. (*See, e.g.*, D.I. 18 Ex. A at 49) (stating CEO O'Connor could receive maximum Synergy Plan award of $15 million) Thus, again, the proxy statement was not materially false or misleading, by commission or omission, with respect to the Synergy Plan.

## B. **Derivative Claims against Individual Directors**

Given the Court's ruling dismissing Seinfeld's direct claims, it is unnecessary to reach the additional arguments raised by the individual defendants in their motion to dismiss Seinfeld's derivative claims. (D.I. 19; D.I. 20; D.I. 30) Therefore, the individual defendants' motion will be denied as moot.[12]

---

[12]The Court notes that Seinfeld also arguably raises theories of waste and unjust enrichment in his derivative action. (D.I. 25 at 10; D.I. 30 at 1) Whatever the merits of those claims, however, the derivative claims are all based on Delaware state law causes of action, namely breach of fiduciary duty. (D.I. 18 at 29) Because the Court is dismissing the federal causes of action, Seinfeld must demonstrate an alternative basis to invoke this Court's jurisdiction. Seinfeld proposes that his lawsuit may proceed in a federal forum because the parties are from different states, and this Court's diversity jurisdiction would therefore allow the case to remain in federal court. 28 U.S.C. § 1332. Republic, however, points out that two of the individual defendants, like Seinfeld himself, are citizens of New York. (D.I. 18 at 29) In an attempt to retain diversity of citizenship, Seinfeld requests leave from the Court to dismiss the state law claims against the two allegedly non-diverse parties so that he may retain diversity of citizenship and proceed with his lawsuit in this forum. The Court sees no just basis to engage in such machinations at this late stage in this case. Therefore, without a federal question and lacking diversity of citizenship, this Court lacks jurisdiction to entertain Seinfeld's state law claims. They are, therefore, dismissed without prejudice.

## IV.    **CONCLUSION**

For the foregoing reasons, the Court will GRANT Republic's motion to dismiss the direct

claims against the corporation.  Also, the individual defendants' motion to dismiss will be

DENIED as moot.  The Court will enter an appropriate Order.[13]

---

[13]The Court has also considered a recent decision from this District that Seinfeld brought
to the Court's attention "because it discusses issues similar to those raised in the Motions to
Dismiss" in this action.  (D.I. 37) (citing Civ. No. 10-527-GMS D.I. 63 and Civ. No. 10-603-
GMS D.I. 36)  In that recent decision, Chief Judge Sleet dismissed § 14(a) direct claims, just as
the Court does here.  This Court finds nothing in the recent decision that supports a contrary
disposition here.